USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 02/29/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

– v.–

SAMUEL RODRIGUEZ,

      Defendant.

---

**MEMORANDUM**
**OPINION & ORDER**

08 Cr. 1024 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

  Defendant Samuel Rodriguez is before the Court for the third time based on violations of the conditions of his supervised release. Rodriguez has admitted that he violated conditions requiring drug treatment and testing, and that he used cocaine while on supervised release. (Jan. 13, 2016 Conf. Tr. (Dkt. No. 67) at 22) Six additional violation specifications remain pending against him. (See Oct. 9, 2015 Request for Summons)

  The Government argues that Rodriguez faces a maximum sentence of imprisonment of two years for violating his supervised release terms on each of the two underlying counts of conviction. The Government further contends that any terms of imprisonment could be imposed to run either concurrently or consecutively. Defendant argues that he faces a maximum sentence of imprisonment of 237 days, and that consecutive sentences are not permissible.

## BACKGROUND

### I. UNDERLYING CONVICTIONS AND PRIOR SUPERVISED RELEASE VIOLATIONS

  On February 6, 2009, Samuel Rodriguez pleaded guilty to felon in possession, in violation of 18 U.S.C. § 922(g), and to making a false statement to federal agents, in violation of

18 U.S.C. § 1001. (See Feb. 6, 2009 Plea Tr. (Dkt. No. 17)) Although Rodriguez's Guidelines range was 46-57 months' imprisonment, this Court sentenced him to twenty-eight months' imprisonment and three years' supervised release. (Judgment (Dkt. No. 19))

        Defendant was released from prison in 2011. On July 19, 2012, he admitted violating the terms of his supervised release by repeatedly failing to appear for drug treatment and testing. (See July 19, 2012 Plea Tr. (Dkt. No. 29) at 10) On October 17, 2012, this Court revoked Rodriguez's term of supervised release, sentenced him to time served (128 days), and re-imposed a 20-month term of supervised release, which was to be performed at an inpatient drug treatment facility. (Judgment (Dkt. No. 32)) Defendant was warned that the consequences of continuing to violate the conditions of his supervised release would be serious:

> THE COURT: . . . Mr. Rodriguez, if it's not clear already, let me make it crystal clear. . . . I can't put up with endless violations of the terms of your supervised release. At some point even acknowledging the serious challenges you have, the law has to be obeyed and I can't ignore violations. So you really need to look at this as your last chance because if you're before me again, I will tell you now I'm not going to be responsive to arguments that I have a drug problem, I have mental health issues. I've tried to address those. I'm giving you this opportunity. I'm putting you into a program which I'm told will give you the services you need, and if you're not able to abide by the requirements of the program and conditions of the program, and you commit additional violations, there's nothing more I can do for you. And I hope that's clear.
>
> THE DEFENDANT: Yes, your Honor. Absolutely.
>
> THE COURT: I don't want to see you again.
>
> THE DEFENDANT: You won't.

(Oct. 17, 2012 Tr. (Dkt. No. 33) at 14-15)

        On March 21, 2013, this Court issued a summons in response to a petition from the Probation Department alleging that the Defendant had used K2, a synthetic form of marijuana. (See Summons (Dkt. No. 35)) A hearing to address the alleged drug use

was set for April 17, 2013. (Id.) Rodriguez did not appear at the April 17 hearing, however, and, accordingly, this Court issued a bench warrant. (April 17, 2013 Minute Entry) Defendant was eventually arrested, and he admitted to the K2 specification on June 24, 2013. (June 24, 2013 Plea Tr. (Dkt. No. 69) at 9)

On December 26, 2013, this Court sentenced Rodriguez to two years' imprisonment and one year of supervised release. (Judgment (Dkt. No. 42)) He appealed, and the Second Circuit ruled that 18 U.S.C. § 3583(h) requires that a defendant's maximum term of supervised release under 18 U.S.C. § 3583(b)(2) – three years – be reduced by the aggregate length of imprisonment previously imposed upon a revocation of supervised release. United States v. Rodriguez, 775 F.3d 533, 536 (2d Cir. 2014). Accordingly, Defendant's term of supervised release for his second violation of supervised release was reduced to 237 days to account for the 128-day term that he served for his first violation of supervised release. (Dkt. No. 49)

## II.    INSTANT VIOLATION

Defendant began his current term of supervised release on March 3, 2015. (Oct. 9, 2015 Request for Summons ("RFS") at 2) He attended intake assessment for inpatient treatment at two facilities, Odyssey House and Phoenix House, in March and April 2015, respectively. (Id.) He was not admitted to Odyssey House, because that facility is not equipped to treat someone with Rodriguez's mental health history. (Id.) Phoenix House determined that Rodriguez was not appropriate for inpatient treatment and, accordingly, referred him to its outpatient drug and mental health treatment program. (Id.) This modification was approved by the Court. (Id. at 3)

3

Although Defendant completed Phoenix House's two-part intake assessment for drug and mental health outpatient treatment, he was discharged from that program on June 25, 2015, for failing to attend treatment. (Id.) Rodriguez reported that he could not attend sessions at Phoenix House due to his employment in Brooklyn. (Id.) Accordingly, he was referred to Bridge Back to Life, a Brooklyn-based treatment facility. (Id.) Rodriguez did not attend weekly appointments at Bridge Back to Life on September 28, 2015 and October 5, 2015, however, in violation of the terms of his supervised release. (Id.)

On April 24, 2015, the Probation Department instructed Rodriguez to participate in its Random Urine Collection Program (RUP). (Id.) Although he was initially compliant with the RUP, Rodriguez failed to report for testing as directed on September 24, 2015 and October 5, 2015. (Id. at 4-5)

Due to his non-compliance with the RUP, on July 22, 2015, the Probation Department instructed Rodriguez to wear a sweat patch. (Id. at 3) Later analysis of the sweat patch was positive for the presence of cocaine. (Id.) On July 29, 2015, Rodriguez was given another sweat patch. (Id.) Analysis of the second patch was also positive for the presence of cocaine. (Id.)

On July 28, 2015, Defendant's probation officer advised him that he was not allowed to reside with his girlfriend, Shandi Gonzalez, at her Brooklyn home, after Defendant reported that she had hit him on the head during a verbal altercation. (Id. at 3) On September 26, 2015, the probation officer attempted to make contact with Rodriguez at his then-residence – 2340 Valentine Avenue, #8B, Bronx, New York. (Id. at 5) The officer spoke to Defendant's cousin, who informed her that Rodriguez did not stay at that address every night. (Id.) On September 30, 2015, Rodriguez admitted to a probation officer that he had been staying at

4

Gonzalez's Brooklyn home, despite being instructed not to do so, and despite an order of protection that barred him from having any contact with Gonzalez. (Id.)

On August 10, 2015, Defendant informed his probation officer that he had been arrested on August 8, 2015. (Id. at 4) Rodriguez claims that he went to Gonzalez's residence on the evening of August 8 to give her money and diapers for their two-year-old daughter. (Id.) After arriving at the apartment, Rodriguez got involved in an altercation with Gonzalez's twenty-two year old daughter, Hayley Rivera. (Id.) Rodriguez called 911 and claims that he was "stabbed with a fork" by Rivera. (Id.) According to the New York City Police Department arrest report, Rodriguez wrapped his hands around Rivera's neck and applied pressure. (Id.) According to the state court criminal complaint, Rodriguez escalated a verbal altercation by swinging closed fists at Rivera, and he struck Gonzalez when she attempted to intervene. (Id.) During this altercation, Rodriguez and Gonzalez's two-year-old daughter was present. (Id.) Criminal charges related to this incident are pending against Rodriguez in Kings County Criminal Court. (Id.)

On October 13, 2015, the Probation Office requested, and this Court issued, a summons for Rodriguez based on nine alleged violations of the terms of his supervised release. Specifications 1-5 relate to the August 8, 2015 altercation with Rivera at Gonzalez's apartment and the related state criminal charges. (Id. at 5-6) Specification 6 relates to Defendant's failure to participate in drug and mental health treatment at Bridge Back to Life, which is a special condition of his supervised release. (Id. at 6) Specification 7 relates to Defendant's failure to participate in the Random Urine Collection Program, another special condition of his release. (Id. at 6-7) Specification 8 relates to Defendant's sweat patch drug tests on September 24, 2015,

5

and October 5, 2015, which indicated that he had used cocaine. (Id. at 7) Specification 9 relates to Defendant's failure to reside at the Valentine Ave. address. (Id.)

On January 13, 2016, Defendant admitted Specifications 6, 7, and 8. (Jan. 13, 2016 Conf. Tr. (Dkt. No. 67) at 22) Specifications 1-5 and 9 remain pending. (Dkt. No. 75)

At an October 21, 2015 hearing, this Court directed the parties to submit briefing addressing the maximum sentence that could be imposed on Defendant in connection with the pending alleged violations of supervised release. (Oct. 21, 2015 Conf. Tr. (Dkt. No. 73) at 25) The Government argues that the Defendant has two underlying counts of conviction; that a supervised release term was imposed on each count; and that Rodriguez's violation of the conditions of his supervised release exposes him to a maximum sentence of two years' imprisonment on each count of conviction. Nov. 18, 2015 Gov. Ltr. (Dkt. No. 55) at 1) The Government further argues that any terms of imprisonment imposed could run concurrently or consecutively. (Id.) Defendant argues that the maximum term of imprisonment that could be imposed is 237 days and that, in any event, consecutive terms of imprisonment may not be imposed. (Nov. 18, 2015 Def. Br. (Dkt. No. 56) at 1)

## DISCUSSION

### I. MAXIMUM TERM OF IMPRISONMENT

#### A. Consecutive Sentences

18 U.S.C. § 3584(a) provides that "[i]f multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively. . . ." Section 3584 does not specify whether – where a court imposes concurrent terms at the original sentencing – it retains discretion to impose consecutive sentences

where a defendant violates the terms of his supervised release.  The Second Circuit has not addressed this issue.

Without exception, however, other circuits have ruled that Section 3584 "permits a district court to impose consecutive terms of imprisonment upon revocation of supervised release – even when the sentences for the underlying crimes ran concurrently." United States v. Dees, 467 F.3d 847, 851-52 (3d Cir. 2006); see also United States v. Oswalt, 771 F.3d 849, 850 (5th Cir. 2014) (defendant sentenced to three terms of imprisonment to run consecutively for violation of supervised release); United States v. Xinidakis, 598 F.3d 1213, 1215-16 (9th Cir. 2010) (defendant sentenced to three terms of imprisonment for violation of supervised release, with the sentences on the supervised release violations associated with counts 1 and 2 to run consecutively); United States v. Morris, 313 Fed. App'x. 125, 135-36 (10th Cir. 2009) (defendant sentenced to consecutive terms of imprisonment for violating the conditions of his supervised release, although the imprisonment and supervised release terms imposed at his original sentence ran concurrently); United States v. Kafka, 238 Fed. App'x 593, 595 (11th Cir. 2007) ("whether a term of imprisonment imposed for a violation of supervised release is served concurrently or consecutively is 'a question that [18 U.S.C.] § 3584(a) entrusts to the [district] court's discretion'"); United States v. Deutsch, 403 F.3d 915, 917 (7th Cir. 2005) (rejecting the argument that the statutory sentencing scheme "does not allow for consecutive imprisonment"; "[n]o plausible reading of [Section 3584(a)] supports Deutsch's argument that it forbids a district court from imposing consecutive terms of imprisonment upon revocation of supervised release" (emphasis in original)); United States v. Johnson, 138 F.3d 115, 119 (4th Cir. 1998) (defendant sentenced to two terms of imprisonment to run consecutively after revocation of supervised release).

This Court agrees with this line of authority. "[T]he only provision to speak directly to . . . the imposition of multiple terms of imprisonment[]is § 3584(a)," and that statute gives district courts the power to impose consecutive sentences after considering the factors set forth in 18 U.S.C. § 3553(a). Deutsch, 403 F.3d at 917-18. Nothing in Section 3584(a) indicates that it is inapplicable when the sentence in question is being imposed for violations of supervised release. Accordingly, this Court concludes that it has the discretion to order that any terms of imprisonment imposed on Defendant for his supervised release violations run consecutively.

B. **For Purposes Of Determining A Term Of Imprisonment For Defendant's Current Supervised Release Violations, He Will Not Be Credited For Earlier Terms Of Imprisonment Imposed In Connection With Prior Revocations Of Supervised Release**

Although 18 U.S.C. § 3583(h) requires courts to reduce a defendant's maximum supervised release term by the aggregate length of terms of imprisonment previously imposed upon revocations of supervised release, see Rodriguez, 775 F.3d at 536, "prior sentences for violations of the conditions of supervised release are not credited toward, and therefore do not limit, the statutory maximum [term of imprisonment] a district court may impose for a subsequent violation of supervised release" for a crime committed after the passage of the PROTECT Act in 2003. United States v. Epstein, 620 F. 3d 76, 78 (2d Cir. 2010). The Epstein court explained that the PROTECT Act amended Section 3583(e) "to eliminate the credit for terms of imprisonment resulting from prior revocations [of supervised release]." Id. at 80. Accordingly, "the statutory maximum sentences in § 3583(e) apply to each discrete revocation of a defendant's supervised release, irrespective of any time served for previous violations." Id.

Defendant argues, however, that this Court may impose a sentence of imprisonment of no more than 237 days. (Nov. 18, 2015 Def. Br. (Dkt. No. 56) at 8) He argues that 18 U.S.C. § 3583(e)(3) and (h) indicate that Congress intended to provide an "upper limit"

8

for aggregate terms of imprisonment that can be imposed on a defendant who repeatedly violates the conditions of his supervised release. (Id.) 18 U.S.C. § 3583(e)(3) states that a court may "revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such a term of supervised release without credit for time previously served on postrelease supervision[.]" Section 3583(e)(3) also caps the length of the term of imprisonment that may be imposed upon revocation: for Class C or D felonies, such as the crimes Defendant was convicted of,[1] a court may impose a maximum term of imprisonment of 2 years. Defendant argues that a defendant is effectively "serving his supervised release period 'in prison'" when he is sentenced to a term of imprisonment under Section 3583(e)(3), and that he should not be sentenced to a term of imprisonment that is longer than the term of supervised release to which he could be sentenced. (Nov. 18, 2015 Def. Br. (Dkt. No. 56) at 8)

Defendant's argument is not persuasive in light of Epstein, in which the Second Circuit held that the language in the PROTECT Act unambiguously authorizes a court to re-impose the maximum term of imprisonment described in 18 U.S.C. § 3583(e)(3) for each successive revocation of supervised release. Epstein, 620 F.3d at 81; see also United States v. Ellis, 419 Fed. App'x. 94, 95 (2011) (reaffirming Epstein). Accordingly, this Court concludes that Rodriguez is subject to a statutory maximum of two years' imprisonment for violating each of the supervised release terms associated with his two counts of conviction, in the event that this Court again revokes his supervised release.

---

[1] Felon in possession, in violation of 18 U.S.C. § 922(g), is a Class C felony. See 18 U.S.C. §§ 924(a)(2) and 3559(a)(3); see also Rodriguez, 775 F.3d at 537 n.7. Making a false statement to federal agents, in violation of 18 U.S.C. § 1001(a), is a Class D felony. See 18 U.S.C. §§ 1001(a) and 3559(a)(4); see also Rodriguez, 775 F.3d at 537 n.7.

### C. Defendant's Ex Post Facto Arguments

Defendant argues that "every other time that [Rodriguez] faced a violation of supervised release[,] no one thought that consecutive terms of imprisonment for each underlying count of conviction could be imposed[,] and no one advised [Rodriguez] of such a possibility[.]" (Nov. 18, 2015 Def. Br. (Dkt. No. 56) at 15) Rodriguez contends that the imposition of consecutive sentences would run afoul of the "principles of equity and fairness that underlie the ex post facto clause" of the Constitution. (Nov. 18, 2015 Def. Br. (Dkt. No. 56) at 15)

Given the circuit court decisions approving the imposition of consecutive sentences for violations of supervised release pursuant to Section 3584(a) – even when the defendant previously received concurrent sentences – the possibility that consecutive sentences would be imposed if Rodriguez continued to violate the terms of his supervised release was foreseeable. Moreover, Defendant cites no law for the proposition that courts are required to warn defendants that they might be subject to consecutive sentences if they persist in violating the terms of their supervised release.[2]

---

[2] Relying on New Hampshire v. Maine, 532 U.S. 742 (2001), Defendant suggests that the Government should be estopped from arguing for consecutive terms of imprisonment. (Nov. 18, 2015 Def. Br. (Dkt. No. 56) at 16) New Hampshire is inapposite: it involves the question of whether New Hampshire was estopped from taking a particular position in civil litigation with Maine after it had taken a contrary position in litigation nearly thirty years beforehand. The Supreme Court never discussed the application of the estoppel doctrine to criminal proceedings. Moreover, unlike in New Hampshire, the Government here never previously argued that this Court was required to impose concurrent sentences. Instead, the Government – in prior revocation proceedings – simply did not ask the Court to impose consecutive sentences.

Defendant also cites United States v. Olano, 507 U.S. 725, 733 (1993), for the proposition that the Government waived its right to request consecutive sentences. (Nov. 18, 2015 Def. Br. (Dkt. No. 56) at 16 n.5) The discussion of waiver in Olano, however, relates to a defendant's waiver of rights. Nothing in Olano suggests that the Government's failure to request consecutive sentences in prior revocation proceedings prevents it from seeking consecutive sentences now.

Defendant further argues that, because this Court previously imposed concurrent sentences, the "law of the case" doctrine prohibits this Court from now imposing consecutive sentences. (Nov. 18, 2015 Def. Br. (Dkt. No. 56) at 17) The law of the case doctrine is inapplicable here, however, because it applies only to issues that have been "previously adjudicated." This Court's power to impose consecutive sentences for Defendant's supervised release violations has not been "previously adjudicated."[3]

## II. MAXIMUM TERM OF SUPERVISED RELEASE

In United States v. Rodriguez, 775 F.3d 533 (2d Cir. 2014), the Second Circuit held that 18 U.S.C. § 3583(h) requires that a defendant's maximum term of supervised release "be reduced by all post-revocation terms of imprisonment imposed with respect to the same underlying offense. . . ." Id. at 534. Accordingly, the maximum available post-revocation term of supervised release is calculated by subtracting the sum of all post-revocation terms of imprisonment to which the defendant has previously been sentenced from the maximum term of supervised release under Section 3583(e)(3).

The maximum term of supervised release for Defendant's underlying offenses (felon in possession and making false statements to federal officials) is three years. 18 U.S.C. § 3583(b)(2). In connection with the first revocation of his supervised release, Defendant was sentenced to time served (128 days) and a new term of twenty (20) months' supervised release.

---

[3] Defendant also argues that the imposition of consecutive sentences here would violate the rule of lenity. (Nov. 18, 2015 Def. Br. (Dkt. No. 56) at 13-14) The rule of lenity applies only where a criminal statute is ambiguous, however, see Abbott v. United States, 562 U.S. 8, 28 n.9 (2010) ("'[T]he touchstone of the rule of lenity is statutory ambiguity.'" (quoting Bifulco v. United States, 447 US. 381, 387 (1980)), and the circuit courts have found no such ambiguity here. Indeed, every circuit that has considered the issue has concluded that consecutive sentences may be imposed for multiple supervised release violations, and that a defendant is not entitled to credit for terms of imprisonment imposed in connection with prior revocation proceedings.

(Judgment (Dkt. No. 32)) In connection with the second revocation of his supervised release, Defendant was sentenced to a two-year term of imprisonment followed by one year of supervised release. (Am. Judgment (Dkt. No. 42)) The one-year term of supervised release was later reduced to 237 days, to account for Defendant's 128 days of imprisonment in connection with the first revocation. (Am. Judgment (Dkt. No. 49))

Accordingly, if Defendant is not sentenced to any term of imprisonment for the instant violations, the maximum term of supervised release to which this Court could sentence him is 237 days. However, if this Court does impose a term of imprisonment, the maximum term of supervised release will be 237 days minus the term of imprisonment imposed, with credit for time served prior to sentencing.

## CONCLUSION

For the reasons stated above, Defendant faces a maximum sentence of two years' imprisonment on each of the supervised release terms associated with the two underlying counts of conviction. Any sentences of imprisonment imposed on Defendant for his supervised release violations may run consecutively or concurrently. Defendant also faces a supervised release term of as much as 237 days, less any term of imprisonment that is imposed at sentencing.

Dated: New York, New York
February 29, 2016

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge